UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MICHAEL CARTER, BRIAN COSBY, ERNEST SNIPES, FREDERICK GREEN JR., MAURICE PAGE, JEROME GARDNER, LONNIE HOLMES, ALLEN WILLIAMS, KENNETH FALLS, ASHLEY HUBBARD AND VINCENT RUCKER<br><br>Plaintiffs,<br><br>vs.<br><br>THE CITY OF ST. LOUIS, by and through its Refuse Division and its agents including Timothy Banta<br>Serve: Mayor Tishaura Jones<br>1200 Market St., Room 200<br>St. Louis MO 63103<br><br>Defendant. | Cause No. 4:23-cv-01548-CDP |

**PLAINTIFFS' FIRST AMENDED COMPLAINT**

COMES NOW Michael Carter, Brian Cosby, Ernest Snipes, Frederick Green Jr., Maurice Page, Jerome Gardner, Lonnie Holmes, Allen Williams, Kenneth Falls, Ashley Hubbard and Vincent Rucker for their First Amended Complaint, state and allege as follows:

**JURISDICTIONAL ALLEGATIONS**

1. The City of St. Louis (hereinafter "the City") is a charter city established by and organized pursuant to the Missouri Constitution. Mo Const. Art. VI. § § 19, 31-33. The City operates under the Charter of the City of St. Louis, adopted June 30, 1914, as amended (hereinafter the "Charter"). The City is responsible for and operates the City of St. Louis Refuse Division.

2. The City of St. Louis Refuse Division (hereinafter "refuse division") is a division of the department of streets and responsible for collection and disposal of residential waste and also coordinates efforts to reduce the amount of waste going to landfills, such as recycling, composting, and waste reduction.

3. The refuse division, through its Commissioner, Deputy Commissioner, managers, and agents, is in charge of the collection and disposal of refuse, appointing all officers and employees in the refuse division, and establishing such rules and standards and may proceed in any manner as may be necessary for the effective execution, administration, and enforcement of all ordinance provisions relating to the refuse division and the storage, collection and disposal of refuse.

4. Michael Carter is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as a Heavy Equipment Operator II (hereinafter "HEO II").

5. Brian Cosby is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as an HEO II.

6. Ernest Snipes is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as an HEO II.

7. Frederick Green Jr. is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as an HEO II.

8. Maurice Page is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as an HEO II.

9. Jerome Gardner is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as an HEO II.

10. Lonnie Holmes is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as an HEO II.

11. Allen Williams is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as an HEO II.

12. Kenneth Falls is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as an HEO II.

13. Ashley Hubbard is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as an HEO II.

14. Vincent Rucker is a natural person with an address in St. Louis, Missouri and at all times relevant to this Complaint employed by the City of St. Louis, street department, and refuse division under the Classified Service as an HEO II.

15. HEO II positions in the City's Classified Service are within a non-exempt classification for

overtime purposes and entitled to receive one and one-half (1.5x) time rate. For purposes of determining overtime pay rates for non-exempt HEO II employees the regular hourly rate of pay for that position is used.

16. By ordinance, the City of St. Louis prohibits its appointing authorities, including the appointing authority responsible for the refuse division from changing employee work schedules to avoid the payment of overtime. By ordinance, the City of St. Louis requires that whenever an HEO II works hours in excess of forty (40) hours in a work week such hours shall be paid at the one-and-one-half (1.5x) rate.

17. At all relevant times to this Complaint, Timothy ("Tim") Banta is and was a superintendent for the refuse division, a position with authority to actually or effectively recommend hiring, firing, discipline, scheduling and pay administration over HEO IIs including Plaintiffs.

18. Plaintiffs are all African American.

19. This Court has jurisdiction over the parties to this civil action as more factually set forth herein pursuant to 28 U.S.C. § 1331.

20. Pursuant to 28 U.S.C. § 1441(a), this Court is the proper venue for this action.

## COUNT I: THE FAIR LABOR STANDARDS ACT

For Count I of Plaintiffs' cause of action against the City, they state as follows:

21. The City is an employer within the meaning of 29 U.S.C. § 203(d) in that it employs Plaintiffs as HEO IIs in its Classified Service to operate and maintain heavy equipment used in the storage, collection and disposal of refuse for and within the City of St. Louis.

22. As a charter city established by and organized pursuant to the Missouri Constitution. Mo Const. Art. VI. § § 19, 31-33, at all times hereinafter mentioned, the City is a public agency

4

and an enterprise engaged in commerce or the productions of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(C).

23. In performing their job duties as employees within the Classified Service, Plaintiffs operate and maintain heavy equipment used in the storage, collection and disposal of refuse for and within the City of St. Louis, and therefore engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1)(C).

24. At all times hereinafter mentioned, Plaintiffs have been individual employees who were engaged in commerce as required by 29 U.S.C. §§ 206-07.

25. The City has violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206-07, and 215(a)(2) by suffering and permitting the Plaintiffs to work in excess of forty (40) hours without compensating them for the hours worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

26. Moreover, the City, particularly through Timothy Banta, has knowingly, willfully, and with reckless disregard, carried out an improper pattern of failing to pay Plaintiffs for all hours worked and the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

27. HEO IIs fall into two distinct classifications, eight (8) hour drivers and ten (10) hour drivers.

28. Eight-hour drivers are scheduled to work eight (8) hours per day, five (5) days per week, forty (40) hours per week.

29. Ten-hour drivers are scheduled to work ten (10) hours per day, four (4) days per week, forty (40) hours per week.

30. At all relevant times Plaintiffs were instructed to, and did, keep a daily accurate accounting

5

of their time and hours working by handwriting on a pre-printed form, hereinafter referred to as a timecard.

31. Plaintiffs were instructed to, and did, turn in their timecards to personnel within the refuse division who collected the information and transposed it to another pre-printed form for payroll approval.

32. At least one of the forms that collect information from the Plaintiffs' timecards is known as "The Daily Group Attendance Sheet" and contains the following notice:

> Falsification of this document by anyone involved in the time keeping process will result in severe disciplinary action. Exact time shall be entered, employees are required to sign their daily work hours at the end of their work day attesting to the accuracy of the records. Payroll personnel will round all dock and overtime to the NEAREST quarter hour.

33. Non-plaintiff payroll personnel within the refuse division then take the collected forms to which timecard information was transposed, including Daily Group Attendance Sheets, for final approval and processing.

34. On times and days known only to the City, its agents, and representatives to be revealed in discovery, but including the following days, prior to Superintendent Timothy Banta signing and approving payroll, previously included and signed overtime hours were removed with the initials "TB" placed aside the removed overtime hours without right, privilege, or need:

    A.    January 23, 2023

    B.    February 2, 2023

    C.    February 22, 2023

    D.    February 16, 2023

    E.    March 15, 2023

F.     March 8, 2023

35. By the actions above, and upon information and belief other times within the applicable limitations period, the City denied Plaintiffs wages, including overtime wages, for hours they worked within the Classified Service by paying them for fewer hours than Plaintiffs reported on their timecards and submitted to payroll personnel for submission for final approval and processing.

36. On or about March 17, 2023, Plaintiff Michael Carter filed a grievance with the City claiming unpaid wages and unfair treatment by Tim Banta.

37. On or about August 17, 2020, Plaintiff Frederick Green Jr. filed a grievance with the City claiming that refuse division agents, including Tim Banta, do not enforce work rules equally between Black and White employees.

38. On or about April 19, 2021, HEO II Albert Hillard filed a grievance with the City claiming that Tim Banta was disrespectful towards Black employees.

39. On or about February 10, 2024, Plaintiff Ashley Hubbard filed a grievance with the City claiming that some ten-hour drivers receive their regular wage rate when they are required to work on their day off, while other ten-hour drivers have the option to work on their day off and earn one and one half (1.5) times their regular rate.

40. On or about February 27, 2024, Plaintiff Brian Cosby filed a grievance with the City claiming that refuse division Foreman Kimberly ("Kim") Brown reduced his submitted hours from eight (8) hours to seven and one-half (7.5) hours.

41. The practices grieved in the above paragraphs 36-40 persist, making any grievance procedure futile.

42. The City and its agents, are sophisticated parties, and therefore knew or should have known the pay practices described above violate the FLSA.

43. Plaintiffs are and were unsophisticated employees who trusted the City and its agents to pay them according to the law.

44. The decision and practice by the City to not pay for all hours worked and the proper amount of overtime for all hours worked over forty (40) each week was neither reasonable nor in good faith.

45. The economic reality of the City failing and refusing to pay Plaintiffs for all hours worked effectively and practically resulted in a lesser hourly rate of pay than Plaintiffs were entitled to under applicable pay schedules for their positions within the Classified Service.

46. Accordingly, Plaintiffs are entitled to be paid for all hours worked and overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## **COUNT II: FLSA RETALIATION**

For Count II of Plaintiffs' cause of action against the City, they state as follows:

47. All previous paragraphs are incorporated as though fully set forth herein.

48. The City violated Section 15 of the FLSA, 29 U.S.C. § 215(a)(3) by discriminating against employees because such employees have filed a complaint under or related to the Fair Labor Standards Act in the following ways.

49. On or about October 30, 2023, Plaintiffs filed a Complaint alleging violations of the Fair Labor Standards Act in Missouri State Court.

50. On or about February 15, 2024, City Department of Streets Director, Betherny Williams,

8

met with non-plaintiff HEO IIs to announce an immediate change in the refuse division overtime and wage policies.

51. On or about February 16, 2024, Refuse Deputy Commissioner Randy Breitenfeld and Timothy Banta met with Plaintiffs to communicate overtime policy changes, without right, privilege, or need.

52. Prior to the policy change on or about February 15, 2024, an HEO II was authorized to sign up for an additional route (or "payload") if he or she completed his or her regularly scheduled route early. HEO IIs earned one and one-half (1.5) times their regular rate once they began a payload, regardless of whether they finished their regularly scheduled route early.

53. After the policy change enacted on or about February 15, 2024, an HEO II must first complete his or her scheduled hourly shift in order to begin earning one and one-half times the regular rate. Even if an HEO II begins a payload after completing his or her scheduled route early, he or she will not earn one and one-half (1.5) times the regular rate until the scheduled hourly shift ends.

54. The policy change described above was made without prior notice to Plaintiffs, the HEO IIs, or their Union.

55. On or about February 20, 2024, HEO IIs including Plaintiffs filed a grievance with the City claiming that the February 15, 2024, overtime policy change violated the shift differential pay provision in their collective bargaining agreement.

56. On or about January 4, 2024, HEO IIs including Plaintiffs filed a grievance with the City claiming that ten-hour driver HEO IIs who are regularly scheduled to work forty (40) hours per week, ten (10) hours per day, now only receive eight (8) hours of paid holiday hours.

9

57. On or about February 20, 2024, HEO IIs including Plaintiffs filed a grievance with the City claiming that Tim Banta refuses to post open route assignments for bidding, despite their requests.

58. On or about February 27, 2024, Plaintiff Brian Cosby filed a grievance with the City claiming that Foreman Kim Brown was hostile and disrespectful towards him.

59. On or about March 5, 2024, Plaintiff Lonnie Holmes filed a grievance with the City claiming that Kim Brown did not consider Plaintiff Holmes' seniority status when she assigned a newer truck to an employee with less seniority than Plaintiff Holmes.

60. On or about March 11, 2024, HEO IIs including Plaintiff Maurice Paige witnessed refuse division Foreman Kim Brown state that by maintaining the present lawsuit, Plaintiff Michael Carter is the reason for all the changes happening at the refuse division.

61. Prior to the overtime policy change Plaintiffs earned one and one-half (1.5) times the regular rate on every payload. Now Plaintiffs only make one and one-half (1.5) times the regular rate only if they work eight (8) or ten (10) hours first. As payloads now worked prior to the end of a scheduled shift were reduced from one and one-half (1.5) times the regular rate to the regular rate, Plaintiffs' wages have effectively been reduced.

## COUNT III: MISSOURI NOTICE OF REDUCTION OF WAGES LAW

For Count III of Plaintiffs' cause of action against the City, they state as follows:

62. All previous paragraphs are incorporated as though fully set forth herein.

63. The City's actions above described in Count II also violated R.S.Mo. § 290.100 by reducing HEO IIs wages without proper notice.

64. At all times hereinafter mentioned, the City is a corporation doing business in the state within the meaning of R.S.Mo. § 290.100.

10

65. At all times hereinafter mentioned, Plaintiffs were employees affected by the reduction of wages by the City within the meaning of R.S.Mo. § 290.100.

66. The City did not give thirty (30) days' notice prior to reducing the wages of Plaintiffs as required by R.S.Mo. § 290.100.

67. The City did not post a written or printed handbill, specifying the class of employees, here HEO IIs, whose wages were reduced and the amount of the reduction in a conspicuous place or in a place where Plaintiffs may have been at work.

68. The City did not mail each Plaintiff a copy of the notice or handbill specifying the class of employees, here HEO IIs, whose wages were reduced and the amount of the reduction.

69. Plaintiffs have suffered damages and continue to suffer damages as a result of the City's acts or omissions as described herein.

70. The Missouri Law provides injunctive and monetary damages for violations described in this count. See R.S.Mo § 290.100.

## COUNT IV: MISSOURI MINIMUM WAGE LAW

For Count IV of Plaintiffs' cause of action against the City, they state as follows:

71. All previous paragraphs are incorporated as though fully set forth herein.

72. At all times hereinafter mentioned, the City has been an employer within the meaning of the Missouri Minimum Wage Law, R.S.Mo. § 290.500(4).

73. At all times hereinafter mentioned, Plaintiffs have been employees within the meaning of the Missouri Minimum Wage Law, R.S.Mo. § 290.500(3).

74. The City owes Plaintiffs wages, as defined in § 290.500(7) of the Act, to compensate them for labor and services they provided to the City in furtherance of their job duties, the

operation and maintenance of heavy machinery for the collection and disposal of refuse.

75. Plaintiffs are not exempt from receiving overtime benefits under the Missouri Act.

76. As described in Count I above, Plaintiffs worked more than forty (40) hours in workweeks during times relevant to this Complaint, however, the City violated the Missouri Minimum Wage Law by failing to pay Plaintiffs for all hours worked on the City's behalf, and for failing to pay the correct amount of overtime for all hours worked over forty (40) per week. See R.S.Mo. §§ 290.502, 290.505.

77. Plaintiffs have suffered damages and continue to suffer damages as a result of the City's acts or omissions as described herein; though the City is in possession and control of necessary documents and information from which Plaintiffs would be able to precisely calculate damages.

78. The Missouri Minimum Wage Law provides that Plaintiffs are entitled to recover the unpaid wages and an equal amount as liquidated damages. See R.S.Mo. §§ 290.527.

79. In violating the Missouri Minimum Wage Law, the City acted willfully, without a good faith basis and with reckless disregard of clearly applicable Missouri law.

## COUNT V: PRIVATE RIGHT OF ACTION CREATED BY CITY CHARTER

For Count V of Plaintiffs' cause of action against the City, they state as follows:

80. All previous paragraphs are incorporated as though fully set forth herein.

81. Plaintiffs are being paid less than other heavy equipment operators employed by the City for the operation and maintenance of heavy machinery for the collection and disposal of refuse.

82. Plaintiffs are Black HEO IIs being paid less than White HEO IIs employed by the City for

the operation and maintenance of heavy machinery for the collection and disposal of refuse.

83. The City's failure to compensate Plaintiffs in an amount equal to all other HEO IIs employed by the City violates City Charter Article VIII § 7 and Article XVIII §§ 2, 16.

84. The City Charter protects classes of persons, here HEO IIs, by requiring certain conduct on the part of the City: that all HEO IIs be paid equally for equal work.

85. A remedy is appropriate and necessary to promote the primary purpose of these Charter provisions and needed to ensure the effectiveness of these Charter provisions: ensuring equal pay for equal work.

86. Therefore, this Court should afford a remedy to Plaintiffs by recognizing a private right of action to enforce Article VIII § 7 and Article XVIII §§ 2 and 16 of the City Charter and awarding them damages for the City's violation of these Chater provisions.

87. Missouri courts recognize the common law principle that where there is a right, there is a remedy. Therefore, when a legislative enactment confers a special benefit on a class, members of that class have a right to bring a cause of action to enforce the right/benefit. This is equally true when the right/benefit is conferred by Charter because in such a case, the people of the City of St. Louis voted to confer the benefit of equal pay for equal work on all City employees, which is being denied to Plaintiffs.

88. The Chater provisions at issue were designed to specifically protect City employees, like Plaintiffs. Therefore, they have a right to bring a private cause of action to enforce the rights conferred upon them by the City Charter.

89. Plaintiffs performed their duties consistent with their obligations under the Charter by providing civil services, as required of them by the City and stated in paragraphs above.

90. Plaintiffs have been damaged as a result of the City's violations of the City Charter as set

13

forth herein, including but not necessarily limited to lost wages, as well as emotional distress.

### COUNT VI: EQUAL PROTECTION VIOLATION OF THE FOURTEENTH AMENDMENT OF THE UNITED STATES – 42 U.S.C. § 1983

For Count VI of Plaintiffs' cause of action against the City, they state as follows:

91. All previous paragraphs are incorporated as though fully set forth herein.

92. Plaintiffs perform the same civil service functions as all other HEO IIs employed by the City through the refuse division.

93. Plaintiffs and all other HEO IIs employed by the City through the refuse division are similarly situated.

94. The City has the duty and authority to ensure the Plaintiffs are compensated the same as all other HEO IIs employed by the City.

95. The Compensation paid to Plaintiffs is less than all other HEO IIs employed by the City through the refuse division, who have the same rank and length of employment.

96. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1.

97. The Equal Protection Clause requires that a governmental entity treat all similarly situated people alike.

98. Plaintiffs have been singled out and treated differently from similarly situated HEO IIs employed by the City through the refuse division because they are receiving less compensation then other HEO IIs of the same rank and years of service.

99. The difference in compensation paid to Plaintiffs and other HEO IIs is so unrelated to any legitimate purpose that it is irrational, particularly when the City Charter mandates equal

pay for equal work.

100. Plaintiffs are African American HEO IIs and are paid less than other similarly situated White HEO IIs.

101. The City's acts and/or omissions set forth herein are in violation of the Fourteenth Amendment and enforced through 42 U.S.C. § 1983.

102. As a direct and proximate result of the acts and/or omissions of the City as set forth herein, Plaintiffs have been damaged, including lost wages, as well as emotional pain and suffering.

103. The conduct of the City as set forth herein was wanton, willful, and showed a reckless indifference to Plaintiffs' Fourteenth Amendment rights, justifying an award of punitive damages against them in their individual capacities so as to punish them and to deter them and others from engaging in similar conduct in the future.

104. The City can be held liable in an action at law for the deprivation of Plaintiffs' Constitutional rights, privileges, and immunities under 42 U.S.C. § 1983.

## COUNT VII: BREACH OF CONTRACT

For Count VII of Plaintiffs' cause of action against the City, they state as follows:

105. All previous paragraphs are incorporated as though fully set forth herein.

106. During times relevant, Plaintiffs entered into contracts with the City whereby such persons agreed to perform services as part of their employment by the City and the City agreed to compensate such persons for all such services based upon specified hourly rates of pay (hereinafter "the contracts").

107. The City breached and violated the contracts by failing to pay Plaintiffs for time worked.

108. Plaintiffs performed their duties under the contract and were damaged by the City's breach.

109. Plaintiffs are also bargaining unit members of AFSCME Council 61, AFL-CIO Local 410 ("Union").

110. The City and Union are parties to a Collective Bargaining Agreement ("Agreement").

111. The City's actions described in Counts I-II breached the following provisions of the Agreement:

   A. The City and the Union agree there shall be no change to Shift Differential pay… The City and the Union agree that there shall be no change to Weekend Differential pay.
   Article VII, §§ 7-8.

   B. Further, employees who file a complaint of discrimination/harassment or who cooperate in an investigation of a complaint of discrimination/harassment shall not be subject to retaliation.
   Article XII.

   C. Route bidding occurs when any route has no permanently assigned driver. Any route that becomes vacant or any newly created route will be posted for one (1) week at all work locations. Any employee who wants to be considered for that route must submit a written request to the Refuse Superintendent during the one (1) week period. If more than one employee applies for the route, the route will be awarded to the most senior employee based on Refuse Division seniority and classification years of service as a Heavy Equipment Operator II (HEO II) alley or cart driver. Any single driver, who has bid into a route, may not change routes more than once in a twelve (12) month period. Any driver who relinquishes their route will be assigned by their supervisor and incapable of bidding on open routes for a period of twelve (12) months. Routes will be adjusted to equalize workloads and travel time. Any employee may request a review of their route if they feel it needs to be adjusted. New trucks shall be assigned by seniority (in their work group/section). When a driver receives a new truck, that driver shall be assigned that truck (when they are at work) for a period of five (5) years (before being considered for a new truck).
   Appendix C.

112. The Agreement incorporates the City compensation ordinance in its terms. Article VII, XI.

113. The City's actions described in Counts I-II violated the following sections of the City of St. Louis Ordinance 71686:

16

- A. Beginning with the effective date of this ordinance, the following positions in the City Service with bi-weekly rates are hereby allocated as listed below in accordance with the classification plan by the Director of Personnel to a grade and overtime code in the following section with rates established in Section 2 of this ordinance in accordance with Section 3(a) and Section 9(e) of Article XVIII of the City Charter

    Ordinance § 1.

- B. The appointing authority shall certify on each payroll or a subsidiary document that each person whose name appears on the payroll has been lawfully appointed at a salary provided by this ordinance and that the employee has actually worked the time for which he/she will be paid, subject to the provisions of this ordinance governing hours of work and leaves of absence in the Classified Service.

    Ordinance § 13.

- C. Employees working full-time and paid a bi-weekly rate whose pay is established in Sections 2(a) or 2(b) of this compensation ordinance shall receive leave with pay, pay with compensatory time off in lieu of pay as holiday compensation in an amount that is proportionate to the number of hours the employee is regularly scheduled to work in a day or shift. For example: Employees working an average of forty (40) hours a week, five (5) days a week, eight (8) hours a day shall receive eight (8) hours of compensation for the holiday; employees working an average of forty (40) hours a week, four (4) days a week, ten (10) hours a day shall receive ten (10) hours of compensation for the holiday.

    Ordinance § 16

- D. These are non-exempt classes that receive overtime compensation at the one and one-half (1.5x) time rate… For purposes of determining overtime pay rates for non-exempt employees, the regular hourly rate of pay shall be used.

    Ordinance § 15.

114. The City's contract violations persist despite HEO IIs grievances, including but not limited to grievances described in paragraphs 36-40 and 55-59, making such grievance procedures futile.

115. Plaintiffs are entitled to the total damages resulting from the City's breach.

**CONCLUSION**

WHEREFORE, all Plaintiffs request judgment in their favor against the City, awarding all unpaid wages, including overtime, lost wages and benefits, liquidated damages, front wages, emotional distress damages, compensatory damages, punitive damages, pre- and post- judgment interest, and attorney's fees and costs, as well as any other relief this Court deems may be just and proper.

Respectfully submitted,

HARTNETT REYES-JONES, LLC


/s/ Daniel J. Sparks
DANIEL J. SPARKS, No. 75348
JAMES P. FAUL, No. 58799
4399 Laclede Avenue
St. Louis, Missouri 63108
Telephone:  314-531-1054
Facsimile:   314-531-1131
dsparks@hrjlaw.com
jfaul@hrjlaw.com

Attorneys for Plaintiffs